FILED
United States Court of Appeals
Tenth Circuit

March 6, 2020

Christopher M. Wolpert
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

CIRILO OROZCO-SANCHEZ,

    Defendant - Appellant.

No. 19-2009
(D.C. Nos. 2:16-CV-00762-WJ-KBM &
2:15-CR-01557-WJ-1)
(D. N.M.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **TYMKOVICH**, Chief Judge, **HARTZ** and **BACHARACH**, Circuit Judges.
_____

In 2015 Cirilo Orozco-Sanchez accepted a plea agreement and pleaded guilty

to one count of illegally reentering the United States after having been deported, in

violation of 8 U.S.C. § 1326(a) and (b). He later filed a motion under 28 U.S.C.

§ 2255 claiming that his attorney was ineffective in counseling him about the plea

agreement and in failing to file an appeal. The district court denied relief, but it

granted a certificate of appealability (COA) on whether Mr. Orozco's counsel was

_____

[*] After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
submitted without oral argument. This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel. It
may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

ineffective and whether he suffered prejudice with regard to either the plea agreement or the appeal. We affirm the district court's denial of relief.

## BACKGROUND

### I. Prior Conviction and Underlying Conduct

In 2011 Mr. Orozco pleaded guilty to violating § 1326(a) & (b). Having served the imprisonment portion of his sentence, he was released on March 12, 2015, and removed to Mexico. Just two weeks later, however, on March 25, he was apprehended in New Mexico. Mr. Orozco states that drug traffickers had kidnapped him a few days after his return to Mexico and had threatened to kill him if he did not recross the border, when and how they directed, to distract border officers from a drug-smuggling operation.

### II. Plea Proceedings

After charging Mr. Orozco with another violation of § 1326(a) and (b), the government offered him a plea agreement under Federal Rule of Criminal Procedure 11(c)(1)(C). The proposed agreement did not establish an exact sentencing range, but instead provided for a downward departure or adjustment in offense level that partially depended on Mr. Orozco's criminal-history category. Mr. Orozco would see a greater benefit from the plea agreement if he were in criminal-history categories I-V, rather than in category VI. The agreement limited the parties' sentencing arguments, including precluding Mr. Orozco from arguing for any other departure or variance, and it contained an appeal waiver.

2

Mr. Orozco's counsel, Margaret Strickland, thought Mr. Orozco would be in criminal-history category V. She advised him that his Guidelines range with the agreement would be 30 to 37 months, while without the agreement it would be 63 to 78 months. And at the plea hearing, both Ms. Strickland and the magistrate judge made statements indicating that Mr. Orozco's Guidelines range would be 30 to 37 months:

> MS. STRICKLAND: . . . Because of Mr. Orozco's prior criminal history, he's in Category V and it carries an enhancement for a very old trafficking case which would put him beginning at Level 20.
>
> He is going to receive a seven-level reduction under this offer down to a Level 13. That puts his range down from 63 to 78 months down to 30 to 37 months. So it's a significant reduction. On his last prior reentry, he received 63 months. So he'd be receiving quite a reduction in the sentencing range.
>
> THE COURT: That's not a bad deal given your criminal history. . . . [W]ithout your plea agreement, you'd be looking at 63 to 78 months, with this plea agreement, 30 to 37 months. Do you understand?

R. at 103-04. Mr. Orozco accepted the agreement and pleaded guilty.

As it turned out, however, Ms. Strickland was wrong about the applicable Guidelines range. When she received Mr. Orozco's presentence report, she discovered she had miscalculated the impact of a prior conviction. Mr. Orozco was not in criminal-history category V, but in category VI. And instead of being at offense level 13, as Ms. Strickland had thought, he was at offense level 19, facing a Guidelines range of 63 to 78 months. Without the agreement the offense level would have been 21 and the range would have been 77 to 96 months.

3

Ms. Strickland called Mr. Orozco and told him about the increased sentencing range. She mentioned the possibility of continuing the case to try to get a lesser sentence, but Mr. Orozco did not request her to seek a continuance.

At sentencing, the government conceded that "a low-end sentence would be sufficient but not greater than necessary in these circumstances." *Id.* at 58. The district court responded that "on individuals who are in Category 6, the highest Criminal History Category, I am generally not inclined to go with the low end of the guideline sentence," but it invited Ms. Strickland to advocate for her client. *Id.*

Ms. Strickland requested a sentence of 63 months, at the low end of the Guidelines range. She stated that Mr. Orozco "does have an imperfect duress defense that I know he wants to discuss with the Court. . . . I have discussed that with my client extensively and we still decided to enter into a plea agreement even with that sort of imperfect duress defense." *Id.* at 59. Mr. Orozco then informed the court, "I'm here because I was kidnapped and they obligated me to do this. . . . I'm here because I was threatened by death. They were going to kill me. I had just gotten out of prison 12 days before." *Id.* The district court responded, "I can't control the circumstances in Mexico but you've been deported numerous times. You keep illegally reentering the United States. Your conduct shows that you have no respect for the laws of the United States." *Id.* at 63. The district court sentenced Mr. Orozco to 72 months' imprisonment.

4

**III.    The § 2255 Motion**

Mr. Orozco did not appeal.  But acting pro se, he filed a § 2255 motion raising several challenges to his conviction and sentence.  After receiving appointed counsel, he narrowed his claims to two allegations of ineffective assistance of counsel—that Ms. Strickland was ineffective in (1) not counseling him properly regarding his plea agreement and (2) failing to file a notice of appeal or consult with him about filing an appeal.

**A.    Proceedings Before the Magistrate Judge**

The magistrate judge held a hearing at which both Mr. Orozco and Ms. Strickland testified.  Mr. Orozco testified that Ms. Strickland told him his sentence would be between 30 and 37 months.  He learned he was facing a range of 63 to 78 months only when she called him after he had pleaded guilty.  She mentioned continuing the case to try to get a lesser sentence, but Mr. Orozco did not request her to seek a continuance.  As he put it, "I just wanted her to finish this because I just wanted to get out of this."  *Id.* at 291.  Even so, Mr. Orozco believed that he could seek a sentence of less than 63 months by telling the sentencing judge about his kidnapping, because Ms. Strickland did not tell him that the plea agreement prohibited a sentence of less than 63 months.  If he had understood that limitation originally, he would not have accepted the plea agreement, and having accepted it, he would have requested to withdraw from it.  He further testified that at the end of the sentencing hearing, he asked Ms. Strickland "if she would be able to . . . appeal for me," but he did not know whether or not she heard him, because she was taking the

5

interpreter headsets off him at the time. *Id.* at 296. He had no other communications with Ms. Strickland.

Ms. Strickland admitted that she had misestimated the sentencing range to be 30 to 37 months. She denied *assuring* Mr. Orozco that would be his sentencing range, indicating her statements during the plea colloquy were just an estimate. She conceded, however, that it is a "fair reading of the transcript" that she was informing the magistrate judge of specific details of the plea agreement. *Id.* at 339. And ultimately she agreed that her "advice did not adequately advise him of the consequences of the plea before he entered the plea." *Id.* at 372. She confirmed Mr. Orozco's testimony that she had brought up moving for a continuance and possibly trying to withdraw the plea, but that he was not interested. But she contradicted his testimony about believing he could argue for a sentence of less than 63 months, stating that she advised him that the plea agreement was binding. Regarding whether Mr. Orozco requested her to appeal, she testified that she did not recall his asking to appeal at sentencing. And she received no communications from him after sentencing, asking her to appeal. If he had asked her to appeal, she would have filed a notice of appeal.

Applying the two-prong ineffective-assistance test set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984), the magistrate judge issued proposed findings and a recommended disposition concluding that Ms. Strickland had performed deficiently in counseling Mr. Orozco about the plea agreement, but that Mr. Orozco had failed to show he suffered prejudice because (1) he failed to show a reasonable

6

probability that he would have chosen to forgo the plea agreement, and (2) he failed to show a reasonable probability that the end result of entering an open plea would have been more favorable to him. The magistrate judge further concluded that Ms. Strickland had not performed deficiently by not filing an appeal. She found that Ms. Strickland had not heard Mr. Orozco request an appeal and that under the circumstances, she did not have a duty to consult with him about an appeal. The magistrate judge therefore recommended that the district court deny the § 2255 motion.

### B. Proceedings Before the District Court

Both parties objected and responded to each other's objections. Mr. Orozco asserted that he had established a reasonable probability that he would have entered an open plea had he been competently advised. He argued that the magistrate judge had underestimated the strength of his arguments in support of a downward departure or variance and failed to account for the fact that Ms. Strickland's incompetent advice had conflicted her from adequately advising whether Mr. Orozco should withdraw his plea. He further asserted that the decision to reject the plea agreement would have been rational. Regarding the failure to appeal, Mr. Orozco objected to the magistrate judge's determinations that he did not adequately request an appeal and that Ms. Strickland did not have a duty to consult with him about an appeal. For its part, the government objected to the conclusion that Ms. Strickland performed deficiently in counseling Mr. Orozco about the plea.

7

The district court declined to determine whether Ms. Strickland performed deficiently in counseling Mr. Orozco about the plea agreement, instead deciding the plea-agreement claim on the prejudice prong. It noted that Mr. Orozco's position— that he need show only that he would have entered an open plea and that such a decision would have been rational—differed from the magistrate judge's prejudice test, which required Mr. Orozco to show not only that he would have entered an open plea, but also that the result of the proceeding would have been more favorable to him. Ultimately, the district court was more persuaded by the magistrate judge's test, holding that Mr. Orozco was required to show "(1) that in the absence of ineffective assistance he would have pursued a different plea option *and* (2) that there was a reasonable probability that the ultimate outcome—the length of his sentence—would have been more favorable." R. at 632. It skipped the first part of this test, focusing on the second. It concluded that Mr. Orozco "failed to establish a reasonable probability that the end result of the criminal process would have been more favorable for him absent ineffective assistance of counsel." *Id.* at 633.

As for the failure to file an appeal, the district court agreed with the magistrate judge that Mr. Orozco had failed to show that Ms. Strickland performed deficiently. It adopted the magistrate judge's finding that Mr. Orozco did not adequately advise Ms. Strickland that he wished to appeal. And like the magistrate judge, it concluded that Mr. Orozco had failed to establish that the circumstances obligated Ms. Strickland to consult with him about an appeal.

8

Accordingly, the district court denied the § 2255 motion, but it granted a COA on four issues:

> 1) whether representation by Petitioner's counsel at the time Petitioner entered into his Plea Agreement and pled guilty was constitutionally ineffective; 2) whether Petitioner suffered prejudice due to constitutionally deficient representation at the time he entered into his Plea Agreement and pled guilty; 3) whether Petitioner's counsel failed to adequately advise him of his right to appeal; and 4) whether there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed.

Supp. R. at 21.

## DISCUSSION

"We review the district court's legal rulings on a § 2255 motion de novo and its findings of fact for clear error.  A claim for ineffective assistance of counsel presents a mixed question of fact and law, which we review de novo."  *United States v. Orange*, 447 F.3d 792, 796 (10th Cir. 2006) (citation omitted).  "In other words, this Court accepts the District Court's factual findings so long as they are not clearly erroneous and reviews de novo whether [counsel's] assistance was ineffective as a matter of law."  *Boltz v. Mullin*, 415 F.3d 1215, 1222 (10th Cir. 2005).

*Strickland v. Washington*'s two-prong test applies to both of Mr. Orozco's ineffective-assistance claims.  *See Roe v. Flores-Ortega*, 528 U.S. 470, 476-77 (2000) (failure to file appeal); *Hill v. Lockhart*, 474 U.S. 52, 58 (1985) (guilty plea).  Under *Strickland*, Mr. Orozco "must show that counsel's performance was deficient," meaning that "counsel's representation fell below an objective standard of reasonableness."  466 U.S. at 687, 688.  He must further "show that the deficient

9

performance prejudiced the defense," meaning that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 687, 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. "[T]he ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged." *Id.* at 696.

## I.     Counsel's Plea-Related Conduct

Mr. Orozco first argues that Ms. Strickland was ineffective in counseling him about the plea agreement. He asserts that her performance was deficient and that he was prejudiced because he agreed to a binding plea agreement that he would not otherwise have accepted.[1] Like the district court, we focus on *Strickland*'s prejudice prong. *See Strickland*, 466 U.S. at 697 (noting that a court may focus first on either prong and need not examine both if one is not satisfied).

### A.     Legal Background

To place Mr. Orozco's argument in context, we survey relevant decisions regarding prejudice in the guilty-plea context. We start with *Hill*. There, after establishing that *Strickland* applies to challenges to guilty pleas based on ineffective

---

[1] Mr. Orozco also suggests he suffered prejudice from Ms. Strickland's failure to negotiate a better plea agreement. But he neither identifies where he made this argument in the district court nor explains why this court should entertain an argument made for the first time on appeal. *See United States v. Moya*, 676 F.3d 1211, 1213 (10th Cir. 2012) (defendant "did not raise these matters in district court and has not provided a reason to deviate from the general rule that we do not address arguments presented for the first time on appeal" (internal quotation marks omitted)).

10

assistance of counsel, *Hill*, 474 U.S. at 58, the Court held that the prejudice prong "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process," *id.* at 59.  Thus, when the defendant asserts he would not have pleaded guilty if counsel had advised him correctly, "to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.*

In *Flores-Ortega*, 528 U.S. at 474, counsel failed to file a notice of appeal. Consistent with *Hill*, because "counsel's alleged deficient performance arguably led not to a judicial proceeding of disputed reliability, but rather to the forfeiture of a proceeding itself," the Court imposed a presumption of prejudice.  *Id.* at 483.  "[W]e cannot accord any presumption of reliability . . . to judicial proceedings that never took place." *Id.* (internal quotation marks omitted).  To perfect a showing of prejudice in this context, a defendant must demonstrate a reasonable probability that, had counsel not performed deficiently, he would have timely appealed.  *See id.* at 484, 486.

Next, in *Padilla v. Kentucky*, 559 U.S. 356, 359 (2010), defense counsel incorrectly advised a lawful permanent resident regarding the immigration consequences of a guilty plea.  The Court noted that as part of establishing prejudice in these circumstances, a defendant "must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." *Id.* at 372.

11

Two years later, *Missouri v. Frye*, 566 U.S. 134, 139 (2012), presented the opposite circumstances to Mr. Orozco's case—there, counsel failed to communicate a plea offer to the defendant, who later entered an open plea and received a higher sentence. After holding that defense counsel has the duty to communicate plea offers to the client, *id.* at 145, the Court directed that, to show prejudice where a plea offer lapsed or was rejected, defendants must demonstrate a reasonable probability that (1) they would have accepted the earlier offer had they been afforded effective assistance, (2) the prosecution would not have canceled the plea and the court would have accepted it, and (3) "the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time." *Id.* at 147.

In *Frye*'s companion case, *Lafler v. Cooper*, 566 U.S. 156, 160 (2012), a defendant rejected a plea offer on the inaccurate advice of counsel, was convicted at trial, and received a higher sentence than he would have under the plea agreement. Thus, "[h]aving to stand trial, not choosing to waive it, [was] the prejudice alleged." *Id.* at 163-64. The Court rejected the idea that a constitutionally adequate trial necessarily resulted in a lack of prejudice: "Even if the trial itself is free from constitutional flaw, the defendant who goes to trial instead of taking a more favorable plea may be prejudiced from either a conviction on more serious counts or the imposition of a more severe sentence." *Id.* at 166. As in *Frye*, therefore, *Lafler* held that to establish prejudice in those circumstances, defendants must show a reasonable probability that they would have accepted the plea agreement, the prosecution would

12

not have withdrawn it and the court would have accepted it, "and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." *Id.* at 164.

In *Lee v. United States*, 137 S. Ct. 1958, 1963 (2017), the defendant's primary concern was avoiding deportation, and he pleaded guilty based on counsel's erroneous advice that the conviction would not support deportation. Looking to *Hill*, the Court emphasized that where a defendant is entirely deprived of a judicial proceeding, the prejudice inquiry "focuses on a defendant's decisionmaking, which may not turn solely on the likelihood of conviction after trial." *Id.* at 1966. "In the unusual circumstances" before the Court, Mr. Lee established prejudice by demonstrating a reasonable probability that he would have rejected the plea, even though his chances of acquittal were slim. *Id.* at 1967. "The decision whether to plead guilty also involves assessing the respective consequences of a conviction after trial and by plea. When those consequences are, from the defendant's perspective, similarly dire, even the smallest chance of success at trial may look attractive." *Id.* at 1966 (citation omitted). "[W]here we are . . . asking what an individual defendant would have done, the possibility of even a highly improbable result may be pertinent to the extent it would have affected his decisionmaking." *Id.* at 1967.

Most recently, in *Garza v. Idaho*, 139 S. Ct. 738, 742, 747 (2019), the Court held that the *Flores-Ortega* presumption of prejudice applies even where a defendant has signed an appeal waiver as part of his plea agreement. "[T]his Court has made clear that when deficient counsel causes the loss of an entire proceeding, it will not

13

bend the presumption-of-prejudice rule simply because a particular defendant seems to have had poor prospects." *Id.* at 747 (citing *Lee*, 137 S. Ct. at 1966-67).

**B.      Discussion**

**1.      *Frye* is the more applicable precedent.**

Mr. Orozco relies on *Lee*, asserting that he need show only a reasonable probability that but for counsel's errors he would not have entered the same plea and that such a decision would have been rational.  Thus, he faults the district court for relying on *Frye* and requiring him to show a reasonable probability that entering an open plea would have resulted in a lower sentence.  But we agree with the district court that *Frye* is the more applicable precedent in these circumstances.

*Lee*, like *Hill*, *Flores-Ortega*, and *Garza*, addresses circumstances in which a defendant was entirely deprived of a proceeding—the defendants in *Lee* and *Hill* of a trial, and the defendants in *Flores-Ortega* and *Garza* of an appeal.  But Mr. Ortega does not claim that he would have proceeded to trial had he been counseled accurately; instead, he asserts that he would have entered an open guilty plea rather than accepting the government's plea offer.  Based on Mr. Orozco's own description of what he would have done, he was not entirely deprived of a proceeding.  Either way, he would have entered a guilty plea.  Thus, this case is more like one "involving mere attorney error," in which "we require the defendant to demonstrate that the errors actually had an adverse effect on the defense."  *Flores-Ortega*, 528 U.S. at 482 (internal quotation marks omitted); *see also Strickland*, 466 U.S. at 693 ("Even if a

14

defendant shows that particular errors of counsel were unreasonable, . . . the defendant must show that they actually had an adverse effect on the defense.").

Analogizing to Mr. Lee's primary interest in avoiding deportation, *see Lee*, 137 U.S. at 1963, Mr. Orozco submits that he had a primary interest in having his imperfect duress defense adequately presented to the court. The record, however, does not support an inference that Mr. Orozco had an interest in presenting the duress argument for its own sake. Rather, the argument was merely a means of achieving his ultimate goal of the lowest possible sentence. This ultimate goal—lowering the sentence—distinguishes Mr. Orozco's circumstances from *Lee*, where the length of the sentence was collateral to Mr. Lee's primary goal of avoiding deportation. *See id.* at 1967.

In these circumstances, *Frye* is the more analogous precedent. Like this case, *Frye* involved two competing guilty pleas, one under a plea offer and the other an open plea. *See Frye*, 566 U.S. at 139. Consistent with *Hill*, the *Frye* Court could have required the defendant to show nothing more than a reasonable probability that he would have accepted the earlier-offered plea agreement instead of entering an open plea. But it chose to go beyond that requirement, also specifically making it "necessary to show a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time." *Id.* at 147. Although Mr. Orozco's circumstances are the inverse of those in *Frye,* the Court's determination that a more favorable outcome

15

is a necessary component of the analysis logically extends to this competing-plea scenario as well.

For these reasons, we agree with the district court that to establish prejudice, Mr. Orozco must show a reasonable probability that entering an open guilty plea would have been more favorable to him than continuing with the plea agreement.

## 2. Mr. Orozco has failed to establish prejudice.

Under the plea agreement, Mr. Orozco faced a sentence of 63 to 78 months. He was sentenced to 72 months. Without the plea agreement, he would have faced a sentence of 77 to 96 months. So to satisfy the more-favorable-result requirement, he must show a reasonable probability that the district court would have departed or varied downward had he entered an open plea. As stated above, "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. In determining whether he made this showing, we consider all the circumstances of the case. *Id.* at 695. And we recognize that the evaluation "should proceed on the assumption that the decisionmaker is reasonably, conscientiously, and impartially applying the standards that govern the decision" and "should not depend on the idiosyncracies of the particular decisionmaker, such as unusual propensities toward harshness or leniency." *Id.*

But Mr. Orozco discusses his various grounds for a downward departure or variance only with regard to whether he would have entered an open plea, how the district court erred in considering its own subjective views, and how the arguments would have altered his decision-making. He does not argue how these grounds

16

establish a reasonable probability that he would have received a lower sentence had he entered an open plea. His failure to adequately address this issue in his opening brief results in a waiver on appeal. *See Baca v. Berry*, 806 F.3d 1262, 1276 (10th Cir. 2015).

Even if Mr. Orozco had adequately briefed this issue, however, we would conclude that he did not establish prejudice. He identifies the following grounds for a downward departure or variance: (1) the "outsized impact" a 17-year-old prior conviction had on the offense level and criminal-history category, Opening Br. at 58-59; (2) his nonviolent criminal history, which distinguishes him from others in criminal-history category VI; (3) the unfairness of adding points for committing the instant offense while under supervised release from the prior conviction, because after his sentencing the relevant Guideline was amended to suggest that a defendant subject to deportation not be sentenced to supervised release; and (4) his imperfect-duress defense.

With respect to the first two grounds, we agree with the district court that "the totality of Mr. Orozco-Sanchez's criminal history," particularly his repeated illegal entries into the United States, would "weigh[] against granting a significant departure or variance." R. at 634. Notwithstanding their nonviolent nature, Mr. Orozco's violations were numerous: in addition to the 17-year-old 1998 conviction for alien smuggling, he accrued convictions for illegal reentry in 2000, 2005, and 2011. Of particular importance, the sentence in his 2011 case was 63 months, and that was not

17

sufficient to deter him from illegally reentering two weeks after he was released from prison in 2015.

We also strongly doubt that the supervised-release argument would have been persuasive at sentencing. As Mr. Orozco acknowledges, the Guideline was amended *after* he was sentenced. Thus, he had been properly subjected to a term of supervised release, which he did in fact violate.

And finally, we agree with the district court that there is no reasonable probability that the imperfect-duress defense would have resulted in a sentence lower than the 72 months Mr. Orozco received. The defense was implausible (he asserted in 2011 as an excuse for his reentry that drug cartels wanted to kill him, and in 1998 he gave the excuse that he was forced at knifepoint to transport aliens). And it was contradicted by Mr. Orozco's admission under oath that he had knowingly and voluntarily reentered the United States.

We therefore affirm the denial of relief on this ineffective-assistance claim.

## II. Counsel's Failure to Pursue an Appeal

Mr. Orozco further alleges that Ms. Strickland was ineffective (1) in failing to fulfill Mr. Orozco's request to appeal, and (2) in failing to consult with him about an appeal.

### A. Failure to File an Appeal

If Ms. Strickland heard Mr. Orozco's request for an appeal, it would be professionally unreasonable for her not to file a notice of appeal. *See Garza*, 139 S. Ct. at 746; *Flores-Ortega*, 528 U.S. at 477. The district court, however, made

18

a factual finding that Mr. Orozco did not adequately communicate a request for an appeal.  That finding is reviewable only for clear error, *see Orange*, 447 F.3d at 796, and "[a] district court's factual finding is clear error only if it is simply not plausible or permissible in light of the entire record on appeal," *United States v. Gould*, 672 F.3d 930, 935 (10th Cir. 2012) (internal quotation marks omitted).

During the hearing, Mr. Orozco acknowledged that Ms. Strickland might not have heard him ask about an appeal, as she was taking off his interpreter headphones. Further, he testified that he made no effort to communicate with her after the sentencing.  In light of this evidence, we cannot conclude the district court clearly erred in finding that Mr. Orozco did not adequately convey a request to appeal to Ms. Strickland.  Because Mr. Orozco has failed to demonstrate that counsel's performance fell below an objective standard of reasonableness as required by *Strickland*, we affirm the denial of relief on this portion of this claim.

### B.     Failure to Consult

"Reject[ing] a bright-line rule that counsel must always consult with the defendant regarding an appeal," *Flores-Ortega* held that counsel must consult "when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing."  528 U.S. at 480.  "In making this determination, courts must take into account all the information counsel knew or should have known."  *Id.*  "Although not determinative, a highly relevant factor in this inquiry will be whether the conviction

follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings." *Id.*

Mr. Orozco argues that a rational defendant would want to appeal based on a nonfrivolous issue (here, whether the plea was unknowing and involuntary). The district court, however, agreed with the magistrate judge that "the risk of receiving a higher sentence [if the plea agreement were overturned on appeal] outweighed the slim chance of receiving a more favorable result through resentencing." R. at 641. "Given that the Plea Agreement *reduced* sentencing exposure, the Court cannot say that a rational defendant would have sought to invalidate it on appeal." *Id.*

Given his original understanding that he would serve no more than 37 months, Mr. Orozco understandably was unhappy with a 72-month sentence. *See Flores-Ortega*, 528 U.S. at 480 ("the court must consider such factors as whether the defendant received the sentence bargained for as part of the plea"). Nevertheless, we agree with the district court that he failed to establish that a rational defendant would want to appeal in the circumstances of this case. If the plea agreement were overturned on appeal and Mr. Orozco permitted to enter an open guilty plea, he would almost certainly have received a higher sentence.

Mr. Orozco further argues that he reasonably demonstrated to Ms. Strickland that he was interested in appealing. The district rejected this premise because Mr. Orozco had rejected Ms. Strickland's offer to try to withdraw the plea, telling her that he just wanted to finish the proceedings; his sentence was within the terms of the

20

plea agreement, even though it was higher than he originally anticipated; and "he did not communicate any desire to appeal his sentence following sentencing so far as [Ms.] Strickland knew." R. at 640. We cannot conclude that any of these factual findings is clearly erroneous, and thus we agree with the district court that Ms. Strickland did not have a duty to consult on the ground that Mr. Orozco had reasonably demonstrated he was interested in appealing.

Because Mr. Orozco has failed to demonstrate that counsel's performance fell below an objective standard of reasonableness as required by *Strickland*, we affirm the denial of relief on this portion of this claim.

## CONCLUSION

We grant Mr. Orozco's motion for an expedited decision and to withdraw his request for oral argument, and we affirm the district court's denial of Mr. Orozco's § 2255 motion.

Entered for the Court

Harris L Hartz
Circuit Judge

21